IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JULIE A. BORNTRAGER                                                                          PLAINTIFF

            v.                                    Civil No. 08-5059

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Julie Borntrager, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed her application for SSI on January 3, 2005, claiming disability due to diabetes, breathing problems, obesity, sleep problems, medication side effects, carpal tunnel syndrome in the left hand, degenerative joint disease in her spine, left hip pain, pain and numbness in her left leg, pain and swelling in her feet, and muscle spasms. (Tr. 37, 46, 83, 92, 95-97, 99-100, 108-110, 129, 272, 280, 284-294). Her application was initially denied and that denial was upheld upon reconsideration. (Tr. 32-34, 41-42). An administrative hearing was held on September 12, 2006. (Tr. 270-301). Plaintiff was present and represented by counsel.

At this time, plaintiff was 48 years of age and possessed a seventh grade education and a general education degree. (Tr. 276). She had past relevant work ("PRW") as a teacher's aide. (Tr. 277-278, 297).

On April 5, 2007, the Administrative Law Judge ("ALJ") concluded that plaintiff's chronic lower back pain secondary to degenerative disk disease, chronic obstructive pulmonary disease, obesity, and non-insulin dependent diabetes mellitus were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 16). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to lift 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours during a 8-hour workday; stand and walk for less than 2 hours during an 8-hour workday; must alternate sitting and standing at will; can occasionally operate foot controls and balance; and, can never climb, stoop, kneel, crouch, or crawl . (Tr. 18). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform her PRW as a surveillance system monitor, order clerk, and cashier. (Tr. 21).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 31, 2007. (Tr. 5-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

**II.   Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.     **The Evaluation Process**:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.*

3

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Evidence Presented:

Records indicate that plaintiff had a history of chronic lower back pain caused by degenerative disk disease, dizziness, sinusitis, headaches, anxiety, and tobacco abuse. (Tr. 135-136, 163-208, 231-241). Her back pain was said to be controlled via Vicodin. (Tr. 135-136). However, she was also prescribed a Medrol dose pack, Naprosyn, Diazepam, Paxil, Vancenase,

4

and Atrovent nasal spray. A CT scan of her lumbar spine taken in April 1998 was normal. (Tr. 174).

On January 20, 2004, plaintiff complained of a headache and stated that her back was "about the same." (Tr. 227). The Hydrocodone seemed to help. Dr.Schemel recommended plaintiff take Excedrin Migraine for her headaches. (Tr. 227).

On April 2, 2004, plaintiff's pain remained controlled via Vicodin. (Tr. 225). A normal physical exam was reported, and Dr. Schemel gave her refills of Valium and Vicodin. (Tr. 225).

On August 2, 2004, plaintiff reported being a little more active in her new home. (Tr. 134, 221). She stated that she had to climb stairs to get to her apartment, and indicated she would not be teaching that year, as she was not rehired. Plaintiff reported that the Hydrocodone generally provided adequate relief for her lower back pain, but she continued to experience occasional shooting pain in her back and hips. Plaintiff also complained of shortness of breath and back pain if she stood for more than a few minutes at a time. An examination revealed tight back muscles and morbid obesity, but no other abnormalities. Dr. Schemel diagnosed her with chronic lower back pain and morbid obesity and prescribed a refill of Hydrocodone. (Tr. 134, 221).

On February 3, 2005, plaintiff complained of numbness and tingling in her left hand and fingers and back problems. (Tr. 133, 216). She explained she could "hardly get around" due to her stiffness and pain. Walking reportedly "pulled" her down. Plaintiff also reported "electric sensations" in her left hand and feet. Dr. Schemel noted plaintiff had some old deformities in her left hand caused by a childhood accident. He diagnosed her with hand numbness, possible

5

carpal tunnel syndrome, and chronic lower back pain. Dr. Schemel prescribed Valium and Hydrocodone. (Tr. 133, 216).

On April 8, 2005, plaintiff underwent a general physical examination with Dr. Garrett. (Tr. 137-143). Plaintiff reported suffering from lower back pain with pain radiating down into her left leg. She indicated that she was currently taking Hydrocodone as well as Diazepam or Valium to treat muscle spasms. Dr. Garrett noted plaintiff weighed 315 pounds. Her uncorrected vision was 20/25 in her right eye and 20/50 in her left eye. She had a significantly decreased range of motion in both hips with a normal range of motion in all other areas. No joint abnormalities, deformities, instability, ankylosis, contractures, muscle weakness, muscle atrophy, or sensory abnormalities were noted. Dr. Garrett diagnosed plaintiff with obesity and a possible herniated nucleus pulpous in her lumbar spine. He then opined that she would have moderate limitations with any weight bearing activity. (Tr. 137-43).

On April 12, 2005, plaintiff underwent pulmonary function studies. (Tr. 144-152). This testing demonstrated a moderate obstruction. (Tr. 148). Dr. Schemel continued treatment with Hydrocodone and Diazepam. (Tr. 213-14).

On September 12, 2005, plaintiff complained of sinus headaches and back pain. (Tr. 212). She informed Dr. Schemel her back pain was getting progressively worse. Although plaintiff was sent to Dr. Garrett for an independent medical review, she had not been able to pursue further evaluation or treatment for her back pain due to financial problems. She also reported suffering weakness and some numbness in her left leg. Dr. Schemel diagnosed plaintiff with allergic rhinitis and mechanical lower back pain. He treated her with Flovent and refilled her Valium and Vicodin for another six months. (Tr. 212).

On March 13, 2006, plaintiff sought treatment for pain on the top of her feet. (Tr. 210). She stated that her feet were also cold and swollen. Dr. Schemel examined plaintiff and noted she had trace edema in her feet and ankles. He diagnosed her with dependent edema, possibly due to autonomic dysfunction. Dr. Schemel advised plaintiff to wear support hose and treated her with Maxzide. (Tr. 210). He indicated plaintiff had a "long term disability related to her back." (Tr. 211).

On August 15, 2006, plaintiff sought treatment from Dr. Nancy Jones for pain in the top of her feet. (Tr. 254, 266). Dr. Jones noted plaintiff's history of degenerative joint disease of the lumbar spine. Plaintiff also reported problems with increased urination and thirst. An examination revealed morbid obesity and subjective tenderness in her lower lumber spine. Blood sugar testing revealed an elevated random glucose level of 248. Dr. Jones diagnosed plaintiff with new onset diabetes and chronic lower back pain. She prescribed a diabetic diet, Glucotrol, Lorcet, and Diazepam. Dr. Jones also asked plaintiff to return for a follow-up concerning her blood sugar in one month. (Tr. 254).

On August 23, 2006, Dr. Jones completed a physical RFC assessment of plaintiff. (Tr. 243-249). She found that plaintiff could occasionally and frequently lift ten pounds; stand and/or walk less than two hours during an eight hour day; must periodically alternate between sitting and standing to relieve pain or discomfort; would be limited in her ability to push and/or pull with her lower extremities; should never climb including ramps, stairs, ladders, ropes, or scaffolds; could only occasionally balance; and, should never stoop, kneel, crouch, or crawl. Dr. Jones also concluded that plaintiff should avoid concentrated exposure to hazards such as heights and machinery. (Tr. 243-249).

On September 13, 2006, plaintiff returned to Dr. Jones' office for a recheck on her diabetes. (Tr. 252, 268). Dr. Jones noted that she also had degenerative joint disease of the lumbar spine and was in need of medication refills. Plaintiff indicated her blood sugar readings had consistently been in the 200-300 range. Her lowest reported reading was 193 and her highest reading was 459. An examination revealed subjective tenderness in her lower lumbar spine and morbid obesity. Dr. Jones diagnosed plaintiff with diabetes and degenerative joint disease in her lumbar spine. She increased plaintiff's Glucotrol dosage and prescribed refills of Lorcet and Diazepam. (Tr. 252).

On November 6, 2006, plaintiff underwent a consultative orthopedic evaluation with Dr. Robert Thompson. (Tr. 256-258). Plaintiff reported problems with back pain and pain and numbness in her left leg and both feet. An examination revealed a full range of motion in the upper and lower extremities and cervical spine with a limited range in the lumbar spine. A neurological exam revealed absent ankle jerks bilaterally and trace knee jerks. There was also decreased sensation in her thigh, calf, and first webspace, particularly in her left leg with heel sensitivity. However, she could walk on her toes and heels. X-rays of her lumbar spine showed degenerative disk disease to a significant degree at the T10-11, T11-12, and L5-S1 levels. (Tr. 257). Dr. Thompson noted that plaintiff's lumbar spine was somewhat serpentine and appeared to have some excessive sclerosis surrounding the sacroiliac joints bilaterally. (Tr. 258). There were also minimal arthritic changes and appeared to be a slight, gentle curve convex to the left with possibly a shift in the opposite direction in the lower thoracic spine. Dr. Thompson suspected sclerosis at levels above the level of the film. He then diagnosed plaintiff with

probable degenerative arthritis of her lumbar spine and a possible herniated disc with definite radiculopathy in her left lower extremity. (Tr. 256-259).

Dr. Thompson also completed a physical RFC assessment. He determined that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. (Tr. 263). He indicated plaintiff could stand and/or walk two hours during an eight hour day. Dr. Thompson noted plaintiff could sit about six hours during an eight hour day. He stated she should never climb, balance, kneel, crouch, crawl, or stoop. Dr. Thompson noted plaintiff was restricted from hazards such as machinery and heights. (Tr. 263).

On March 8, 2007, plaintiff followed-up with Dr. Jones concerning her diabetes. (Tr. 265). Plaintiff informed Dr. Jones that Glucotrol was not controlling her blood sugar levels. She explained her blood sugar levels had been around 250. Dr. Jones examined plaintiff and noted she had subjective tenderness in her lower lumbar spine. She was neither following the diabetic diet nor taking her medication at this time. Plaintiff stated she could not afford her medication. Dr. Jones diagnosed plaintiff with degenerative joint disease in her lumbar spine, chronic low back pain, and poorly controlled diabetes. Dr. Jones started treatment with Metformin and continued treatment with Lorcet and Diazepam. In May 2007, she increased plaintiff's Metformin dose. (Tr. 265).

On August 15, 2007, plaintiff sought treatment for her diabetes and chronic lower back pain. (Tr. 264, 267). She requested to increase her Lorcet dose. Plaintiff also reported numbness in her toes and some symptoms of neuropathy. Dr. Jones noted plaintiff had lost nine pounds but was still morbidly obese. An examination revealed only subjective tenderness in her lower lumbar spine. Dr. Jones diagnosed plaintiff with degenerative joint disease in her lumbar

9

spine, chronic lower back pain, and anxiety. She directed plaintiff to continue the Metformin and Diazepam and added Glucotrol. Dr. Jones also increased plaintiff's Lorcet dosage. Since Plaintiff reported she had fallen at home, Dr. Jones advised plaintiff she could use a cane if she was having balance problems. (Tr. 264).

In August 2007, Dr. Jones recommended that plaintiff be issued a special license plate for the disabled. She explained plaintiff was permanently disabled and could not walk 100 feet without stopping to rest. (Tr. 269).

## IV. Discussion:

We first turn to the ALJ's evaluation of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as

the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that plaintiff had been diagnosed with degenerative disk disease resulting in chronic lower back pain. X-rays revealed degenerative disk disease to a significant degree at the T10-11, T11-12, and L5-S1 levels. (Tr. 257). However, physical examinations yielded only subjective lower back tenderness and a limited range of motion in the lumbar spine. (Tr. 137-143, 256-258). No joint abnormalities, deformities, instability, ankylosis, contractures, muscle weakness, muscle spasms, muscle atrophy, or sensory abnormalities were ever noted. *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Accordingly, while it is evident that plaintiff's back impairment caused significant pain and discomfort, the evidence does not show it to be totally disabling.

Plaintiff was also diagnosed with diabetes in August 2006. (Tr. 254). Dr. Jones prescribed a diabetic diet and medication to help control her blood sugar levels. However, by March 2007, plaintiff had discontinued the Glucotrol prescribed to treat her diabetes and was no longer following the diabetic diet. (Tr. 267). Plaintiff told Dr. Jones that she could not afford the medication to treat her diabetes, but offered no excuse for not following the diabetic diet prescribed. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (holding that "[a] failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.") (citation omitted). Dr. Jones then prescribed Metformin, another oral anti-diabetic drug, which plaintiff appears to have obtained without difficulty. Records do indicate that plaintiff complained of a cold sensation and swelling in her feet, which are symptoms a

11

neuropathy associate with diabetes. However, she did not seek consistent treatment for this alleged impairment. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Further, edema in her feet was noted on only one occasion. (Tr. 210). *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Clearly, had this impairment interfered with plaintiff's ability to ambulate, plaintiff would have sought more consistent treatment.

Dr. Jones also diagnosed plaintiff with morbid obesity and directed her to lose weight. (Tr. 252, 254, 264). As previously noted, however, at one point plaintiff discontinued the diabetic diet prescribed to treat her diabetes, which would have also assisted in her losing weight. *See id*. And, while we are cognizant of the fact that plaintiff's obesity probably made it more difficult for plaintiff to move about, we do not find any evidence to indicate that her weight, even in combination with her other impairments, rendered her incapable of performing all work-related activities. Plaintiff testified that she lived in an upstairs apartment. Had her obesity been as debilitating as alleged, we believe plaintiff would have made lifestyle changes that would have reflected such.

Plaintiff alleges disability due to carpal tunnel syndrome. We note, however that the record contains only one mention of carpal tunnel syndrome. In February 2005, plaintiff complained of electric sensations" in her left hand and Dr. Schemel diagnosed her with carpal tunnel syndrome. (Tr. 133). Aside from this notation, the record is devoid of objective evidence to support plaintiff's claim of carpal tunnel syndrome. In fact, physical examinations did not reveal any limitations concerning plaintiff's arms, hands, or wrists. *See Forte*, 377 F.3d at 895.

12

As such, we cannot say the ALJ erred in concluding that plaintiff's subjective complaints were not supported by the medical evidence of record.

The ALJ also properly considered plaintiff's infrequent treatment for her lung impairment. While lung function tests do indicate a moderate obstruction and a diagnosis of chronic obstructive pulmonary disease is in the record, plaintiff did not seek consistent treatment for this condition. *See Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). She complained of shortness of breath on only one occasion and was prescribed medication to treat her condition once as well. (Tr. 134, 212). *See id.* We do note that plaintiff was morbidly obese and that her obesity could have affected her lung impairment. However, had her condition truly been disabling, the record would contain multiple medical records demonstrating her breathing difficulties and her need for medication.

Plaintiff also reported problems sleeping. However, once again, the record does not show that plaintiff sought consistent treatment for this impairment. *See id.* Plaintiff seeks to excuse her failure to seek more consistent treatment by alleging financial hardship. The record, however, is devoid of evidence to indicate that plaintiff was ever denied treatment due to her inability to pay. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty). Further, for a portion of the relevant time period, it is clear that plaintiff was a smoker and purchased cigarettes. Unfortunately, there is no evidence to indicate that she sought to forgo smoking in

13

order to obtain more frequent medical treatment. Accordingly, we do not find plaintiff's allegations of financial hardship to have merit.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On her adult disability report, plaintiff reported the ability to prepare sandwiches and small meals, sit at the sink and do dishes, vacuum a little bit at a time, drive a car, shop for groceries, pay bills, count change, handle a savings account, use a checkbook/money orders, watch TV, work crossword puzzles, talk on the phone, and take her child to and from school. (Tr. 87- 94). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d at 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities are somewhat inconsistent with an allegation of disability.

Plaintiff contends that the ALJ erred by failing to consider her history of consistent employment with one employer when assessing her credibility. While we acknowledge plaintiff's employment history, we do not agree that it "overwhelmingly" contradicts the ALJ's credibility finding. First, plaintiff testified that she stopped working because her employment contract was not renewed due to funding issues. (Tr. 279). *See Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003) (ALJ properly considered that plaintiff left job not because of disability,

but because the work was seasonal and the season ended). Further, as previously mentioned, the medical evidence does not support plaintiff's allegations of disability. While she does have some limitations related to pain and discomfort, the evidence does not indicate that she is unable to perform all work-related activities. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). In fact, plaintiff herself has indicated that she remains capable of performing some work activities. She testified that she would have continued to work for the school district, had her contract been renewed. (Tr. 279-281). Plaintiff also reported looking for employment after her contract was not renewed. *See Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (claimant's search for work after onset date undermined his claim that he was unable to work). Records indicate she applied for jobs at mini marts and Price Cutters. (Tr. 281).

We next turn to the ALJ's determination that plaintiff had the RFC to engage in a range of sedentary work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

15

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, the results of a general physical examination, the assessment of an orthopaedic specialist, her medical records, and plaintiff's testimony regarding her daily activities. On April 18, 2005, Dr. Robert Redd, a non-examining, consultative examiner, completed a physical RFC assessment. (Tr. 153-162). After reviewing plaintiff's medical records, he determined plaintiff could lift less than 10 pounds frequently and 10 pounds occasionally; stand and/or walk at least 2 hours during an 8-hour workday; sit about 6 hours during an 8-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; and, must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 153-162). This assessment was affirmed by Dr. Kimberly Adametz on July 27, 2005. (Tr. 160).

We also note the assessments of Drs. Garrett, Thompson, and Jones. After reviewing the entire record, we find substantial evidence to support the ALJ's RFC assessment. It is clear that plaintiff's back and hip impairments affected her ability to perform work-related activities. She was prescribed prescription pain medication to treat this condition. Although Drs. Thompson and Jones both indicated that plaintiff would need to avoid exposure to heights and machinery, we note that the record does suggest that plaintiff was suffering from medication side effects that would have warranted these precaution. In fact, no such side effects were ever reported to her treating doctors. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors). Accordingly, we cannot say that the ALJ's failure to include these limitations in his RFC assessment was detrimental.

Likewise, although Dr. Redd assessed plaintiff with environmental restrictions related to her lung impairment, we note that her treating and examining doctors did not. As the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence, we believe the ALJ was correct in affording more weight to the RFC assessments of plaintiff's treating and examining doctors. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Aside from occasional reports of shortness of breath, plaintiff voiced no complaints concerning her alleged lung impairment. There is simply no evidence in the record to support a finding of lung related restrictions. In fact, at least during a portion of the relevant time period, plaintiff smoked cigarettes, clearly a self imposed activity involving exposure to environmental hazards. Therefore, because the ALJ's RFC tracks the RFC assessments of plaintiff's treating and examining doctors, we find substantial evidence to support the ALJ's RFC assessment.

We also find substantial evidence to support the ALJ's finding that plaintiff can perform work that exists in significant numbers in the national economy. A vocational expert testified that an individual of plaintiff's age, education, and work experience who could perform sedentary work requiring only occasional balancing and operating of foot controls; allowing for sitting and standing at will; and, requiring no climbing, stooping, kneeling, crouching, or crawling could still perform work as a s surveillance system monitor, order clerk, and cashier II. (Tr. 297-298). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

AO72A
(Rev. 8/82)

Plaintiff contends that the ALJ erred in failing to develop the record further concerning her lumbar and lung impairments. While it is true that Dr. Thompson did state that an MRI would be useful for determining "the status of the intervertebral discs," he also diagnosed plaintiff, based on her x-ray results and physical examination, and completed an RFC assessment without indicating that more information was necessary. (Tr. 258). If the evidence was sufficient for Dr. Thompson to diagnose plaintiff and complete an assessment, we cannot say that additional evidence was needed for the ALJ.

Likewise, we do not find that plaintiff's lung function tests were incomplete. The test results contained both numerical and percentage values, as well as a diagnosis of a moderate obstruction. (Tr. 144). While further interpretation of these results could have been obtained, given plaintiff's failure to seek consistent treatment for this impairment, we cannot say that further evaluation was necessary. It is clear the ALJ had enough evidence upon which to base an informed decision.

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of June 2009.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)